FILED
2010 Oct-04 PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| WILLIAM McCLOUD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:09-cv-00357-RBP-JEO |
| Lt. GARY MALONE, *et al.*, | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, William McCloud, is a former inmate in the Alabama penal system. At the time of the events made the basis of his claims herein, the plaintiff was incarcerated in the St. Clair Correctional Facility in Springville, Alabama. He filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America while he was incarcerated in that facility. Named as defendants in the complaint are Lieutenant Gary Malone; Sergeant Daniel O'Donnel; Sergeant Charles Guthery; Officer Emile Ambrose; Officer Brian Griffith; Officer Bryan Chapman; Officer Marcellus Mostellas; Officer Kelvin Wysinger and Officer Christopher Bearden. The plaintiff seeks compensatory and punitive damages, as well as injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

**CASE HISTORY**

On June 16, 2009, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to the named defendants and requesting that they file a special report addressing the factual allegations therein. The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On September 14, 2009, the defendants filed a special report accompanied by affidavits and certain documentation from St. Clair prison records relative to the events made the basis of the plaintiff's claims. (doc. #13). The defendants supplemental their special report on September 16, 2009, with additional affidavits. (doc. #14). The plaintiff filed a response to the defendants' special report on October 1, 2009. (doc. #16). However, that response contained no affidavits or documents as required by Rule 56. On June 7, 2010, the parties were notified that the defendants' special report would be construed as a motion for summary judgment and the plaintiff was advised that he would have twenty days to respond to the motion by filing affidavits or other material if he chose. The plaintiff was also advised of the consequences of any default or failure to comply with Rule 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff has failed to submit any further response.

**SUMMARY JUDGMENT STANDARD**

Because the special report of the defendants is being considered a motion for summary judgment, the Court must determine whether the moving party, the defendants, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil*

2

*Procedure 56.* In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## PLAINTIFF'S FACTUAL ALLEGATIONS

The plaintiff is a former inmate of the St. Clair Correctional Facility in Springville, Alabama. He alleges that he was subjected to excessive force on two separate occasions during the evening of

3

January 25, 2009. On that date, he was being housed in a stripped cell located in the infirmary unit and was accused by a nurse of having urinated into the hallway through his tray door slot.[1] (doc. #1). As a result of the nurse's accusation, the plaintiff was visited by Lieutenant Malone and Sergeant O'Donnel, who ordered him to place his hands out of the cell door to be cuffed. *Id*. at 3. The plaintiff admits that he refused the officers' order to be handcuffed, but says he was motivated by fear due to "their reputation of viciously beat[ing] inmates." *Id*. at 3. In response to the plaintiff's refusal to allow himself to be cuffed, Malone and O'Donnel allegedly ordered officers Griffin, Wysinger, Mostellas, Chapman, and Bearden to enter his cell and assault him, at which time he was beaten "unmercifully." *Id*. at 4. The plaintiff alleges that Lieutenant Malone then ordered the five officers, with the addition of Officer Ambroise, to assault the plaintiff a second time because the first beating was "not good enough." *Id*. at 4. As a result of the two assaults, the plaintiff states that his face was rendered "[un]recognizable" and that medical staff attended his injuries for more than an hour, after which he was strapped to a bed for a period of twenty-four hours without meals or bathroom breaks, and administered "strong narcotic[s] to keep him calm."[2] *Id*. at 4.

## DEFENDANTS' SPECIAL REPORT

The defendants paint quite a different picture of the events of January 25, 2009. Their special report indicates that at approximately 6:09 p.m. that evening, the plaintiff, who was then housed in a cell in the infirmary, urinated on a nurse through the tray hole of his cell door. (doc. #13-2). This incident was reported to Lieutenant Malone who, along with Sergeants O'Donnell and Guthrey, went

---

[1] According to the plaintiff, he was housed in a "suicidal cell under psychiatric evaluation." (doc. #1, p. 3).

[2] The complaint contains no description of any specific injuries incurred by the plaintiff.

4

to speak with the plaintiff in the infirmary. *Id*. at 1. When they arrived at the plaintiff's cell, he was angry and combative and refused several orders to cuff up, stating "Fuck you, I ain't coming out for shit." (doc. #13-3, p. 1; doc. #13-5, p. 1). During this time, the plaintiff began banging on his cell door while continuing to ignore the officers' orders to submit to handcuffing.[3] (doc. #13-3, p. 2). At approximately 6:20 p.m., Lieutenant Malone contacted Warden David Wise, who authorized a cell extraction. (doc. #13-2, p. 2).

When the extraction team arrived at the plaintiff's cell, he was given another opportunity to cuff up, but refused.[4] (doc. #13-2, p. 2). Therefore, at approximately 6:45 p.m., the extraction team began work on removing the plaintiff from his cell, during which time the plaintiff remained very combative and angry and continued to refuse orders. *Id*. It took several minutes for the extraction team subdue the plaintiff, but he was finally pushed to the floor by use of a shield, where he was placed in handcuffs and leg irons and then escorted to the front of the infirmary for examination by a nurse.[5] *Id*. The nurse also spoke by telephone to the on-call psychiatrist, Dr. Scott, who prescribed medication for the plaintiff. After the examination, the plaintiff was taken back to his cell and placed on suicide watch. *Id*.

At approximately 8:01 p.m., Lieutenant Malone was called back to the infirmary because the plaintiff was threatening the nursing staff, urinating through the tray slot, and banging his head on

---

[3] The defendants point out that the plaintiff's disruptive behavior was disturbing critically ill patients in the infirmary. (doc. #13-3).

[4] The extraction team was manned by officers Wysinger, Mostella, Bearden, Griffith, and Chapman. (doc. #13-3, p. 2).

[5] The body chart prepared by the examining nurse shows the plaintiff as having sustained what appear to be minor cuts above both eyes and a slightly bloody nose. (doc. #13-10, p. 1). In fact, the limited nature of the plaintiff's wounds was such that he refused the nurse's offer to apply band-aids. *Id*.

5

the door in an attempt to break the glass. (doc. #13-2, p. 3). Malone again ordered the plaintiff to submit to handcuffs, but he refused and continued to bang on the door and urinate on the floor.[6] *Id*. at 3. Warden Wise was contacted again and he authorized a second cell extraction, which was conducted at approximately 8:25 p.m. by officers Chapman, Bearden, Griffith, and Benefield. *Id*. at 3. As with the earlier extraction, the plaintiff was very combative and resisted for several minutes before he was restrained in handcuffs and leg irons. *Id*. at 3. The plaintiff was examined again by nurse and another body chart was prepared which showed that the only noticeable injury he sustained was a "a small amount of blood from [the] nose," for which he refused treatment. (doc. #13-10, p. 2). The Mental Health department instructed that the plaintiff be placed in four point restraints, but these restraints were removed an hour later after he fell asleep. (doc. #13-3, p. 3).

At 11:20 p.m., Lieutenant Malone was notified a third time that the plaintiff had renewed his disruptive behavior by banging on his cell door and urinating on the floor. (doc. #13-2, p. 3). However, this time the plaintiff complied with officers' orders to cuff up, and he was given additional medication and placed in four-point restraints per the orders from medical professionals. *Id*. at 4.

The defendants deny that excessive force was ever used against the plaintiff and point out that the cell extractions were conducted to prevent harm to the plaintiff and others. (doc. #13-2, p. 4). Additionally, the defendants assert that the plaintiff's allegation of having been denied meals and bathroom privileges while restrained for twenty-four hours is "totally false." *Id*. at 4.

---

[6] It is important to note that because the plaintiff was still in the infirmary area, his noise was continuing to disturb other patients, some of whom were critically ill. (doc. #13-3, p. 2).

**DISCUSSION**

Maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 47 (1979). Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff and the courts will not normally second-guess those officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998). When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).[7] In addition to the extent of injury suffered by an inmate, the factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials and 4) any efforts made to temper the severity of the response. *Hudson*, 503 U.S. 1, 7 (1992).

With respect to the need for application of force on the occasions in question, the plaintiff has failed to refute the defendants' showing that there was clearly a need for intervention by prison guards at the time he was confronted by the cell extraction team.[8] It is undisputed that the plaintiff

---

[7] The Eleventh Circuit has explained that this "heightened specific-intent requirement" is not met merely by showing that, in retrospect, the degree of force applied "was unreasonable and hence unnecessary in the strict sense." *Campbell v. Sykes*, 169 F.3d 1353, 1374 (11th Cir. 1999); *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986).

[8] On June 7, 2010, the plaintiff was advised that he may not depend on the mere allegations in his pleadings to counter the defendants' proof, but must respond with his own counter-affidavits and/or

7

was causing a serious disturbance in the infirmary area of the prison and that he had continually refused orders to cuff up. As stated above, our courts have long held that prison officials must be free to take appropriate measures to ensure the safety of inmates and staff. *Wilson*, supra. This clearly would include intervention by guards when inmates engage in the type behavior attributed to the plaintiff, which threatened not only the safety of the staff but interfered with the care of critically ill inmates and threatened the plaintiff's safety as well.[9] When immediate action is warranted, the Eighth Amendment is not violated where, as here, force is applied in a good faith effort to restore order. *Ort v. White*, 813 F.2d 318, 323 (11th Cir. 1987).

The second factor to consider in determining if a prison guard's use of force violates the Constitution is the relationship between the need and the amount of force used. In this instance, the undisputed facts before the court are that the plaintiff reacted in a combative and angry way when confronted by the cell extraction team and that it took several minutes for him to be subdued. It is therefore obvious that the team was showing restraint in their efforts to gain control of the plaintiff and that he was pushed to the floor with a shield only after less physical measures failed. Additionally, there is nothing before the court to suggest that the plaintiff was punched, kicked or hit with a baton and nothing to show that he suffered an injury which would evidence undue force or violence on the part of the defendants. As stated earlier, maintaining safety and security in a

---

documents in compliance with Rule 56. (doc. #18). Although the plaintiff had previously submitted an un-sworn pleading on October 1, 2009, (doc. #16), he has submitted no affidavits or admissible documents to counter the defendants' special report.

[9] It is also apparent that anytime a prisoner causes a disturbance, it has the potential of inciting a wider disturbance involving other inmates. Therefore, in *Whitley*, the Supreme Court recognized that "[w]hen the ever-present potential for violent confrontation and conflagration ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight." 475 U.S. at 321 (internal quotations and citations omitted).

prison or jail setting is an essential goal of the administration. *Bell*, supra. In achieving that goal, prison administrators should be accorded "wide ranging deference" with respect to measures taken in response to actual confrontations with inmates. *Whitley*, supra, at 321; *quoting Rhodes v. Chapman*, 452 U.S., at 349, n. 14. Even if it could be shown in hindsight that the use of the cell extraction team was not strictly necessary to gain control of the situation, that fact alone would not be enough to establish a constitutional claim. "The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Campbell*, supra, at 1374. In other words, where the use of force is needed, an unreasonable degree of force alone does not establish that the force was malicious and sadistic for Eighth Amendment purposes. *See McBride v. Rivers*, 170 Fed.Appx. 648, 657 (11th Cir. March 14, 2006). In this instance there are no facts before the court which show that the officers responding to the plaintiff's disturbance applied force with the "specific intent" to maliciously or sadistically cause harm, or that their response was unreasonable. *Id*.

The third factor to be examined in an excessive force claim is whether or not a responsible official would have reasonably perceived a threat under the circumstances. *Hudson*, supra. In that regard, the plaintiff has not refuted the defendants' factual submission which clearly shows that prison order and discipline were in jeopardy as result of his actions. The defendants testify to ongoing violent, disruptive and non-compliant behavior on his part in an area of the prison (the infirmary) where disturbances could very well have a more profound affect than in other areas. The Supreme Court has long recognized "the very real threat" that prison disturbances pose to both staff and inmates and that internal security is "central to all other goals" of a correctional institution.

9

*Whitley*, 475 U.S. at 320; *Bell*, 441 U.S. at 546-47 It therefore seems obvious that preventing and quelling inmate disturbances of the kind caused by the plaintiff is an integral part of achieving that goal. Accordingly, it is reasonable to conclude that defendants perceived a threat posed by the plaintiff's behavior and that their response to that behavior was an appropriate reaction in light of the prison administration's responsibility to maintain order.

Finally, *Hudson* requires the court to examine the facts as they relate to the defendants' efforts to temper the severity of the response. In this instance, the plaintiff makes no attempt to rebut the defendants' special report which shows that the cell extraction teams were not excessive in their efforts to control him and that their actions were taken in part to protect him from harming himself. There is nothing before the court which shows that the extraction teams continued to use force beyond the point where the plaintiff was clearly subdued. Additionally, the special report shows that the plaintiff was taken immediately to the front of the infirmary to receive medical care and was provided medications to calm him. There are no material facts before the court which would support the inference that the defendants acted with wantonness or with malicious motive or that their actions were anything more than a good faith effort to maintain or restore discipline and protect the plaintiff and others from harm.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that the defendants' special report be treated as a motion for summary judgment and, as such, that the motion be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Written objections shall

specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge. A copy of the objections must be served upon all other parties to the action. Frivolous, conclusive, or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal except upon grounds of plain error or manifest injustice.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and upon counsel for the defendants.

**DONE**, this the 4th day of October, 2010.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge